G. E. MATHIS COMPANY, Plaintiff-Appellee, *v.* CENTENNIAL INSURANCE COMPANY, Defendant-Appellant.

First District (2nd Division)   No. 79-205

Opinion filed January 29, 1980.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Alvin G. Hubbard and John Skapars, of counsel), for appellant.

Sidley & Austin, of Chicago (Albert R. Karel, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, the G. E. Mathis Company, filed this action against defendant, the Centennial Insurance Company, seeking a declaratory judgment that under the terms of a liability insurance policy, defendant was obliged to defend a personal injury action brought against plaintiff by James J. Sullivan. Plaintiff also sought relief on the theory that plaintiff had instructed defendant's agent to procure, and had relied on the agent's representation that he had procured, insurance covering all the risks of plaintiff's business.

The cause was tried to a jury in the circuit court of Cook County. At the close of all the evidence, the court directed a verdict for defendant on plaintiff's estoppel theory; the correctness of this ruling is not questioned on this appeal. The court further determined that the question of coverage under the policy was purely a matter of law. Ultimately the court held that while the policy did not cover the products liability and negligence counts contained in the personal injury complaint, the policy did not exclude the implied warranty liability alleged therein, and defendant owed plaintiff a defense on that count.

Defendant has appealed from the portion of the judgment holding that it owes plaintiff any defense. Plaintiff initially filed a cross-appeal from the court's ruling on the products liability and negligence counts, but the cross-appeal has been abandoned. The controlling issue on appeal therefore is the correctness of the trial court's interpretation of the terms of the insurance policy so as to require defendant to undertake plaintiff's defense on the implied warranty theory of recovery alleged in the personal injury complaint.

Insofar as this appeal is concerned, the facts are undisputed. In January of 1971, James J. Sullivan was injured when a cart fabricated by plaintiff and sold to Sullivan's employer collapsed while Sullivan was using it. Sullivan sued plaintiff, among others, for resulting damages. His

second amended complaint in three counts sought recovery under the theories of products liability, negligence, and breach of an implied warranty of merchantability, respectively.

At the time of the occurrence, plaintiff was insured by defendant under a policy, the first section of which covered comprehensive physical damage to plaintiff's buildings and personal property, as well as damage to its earnings, at a premium of $2097. Section II of the policy contained automobile liability insurance, for which the premium totaled $2529, and "Comprehensive General Liability Insurance Coverage," at a premium of $207, for a total premium of $4833.

The "Comprehensive General Liability Insurance Coverage Part" (Item 1 of Section II) of the policy begins by providing that, subject to the policy provisions:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
> Coverage A. bodily injury or
> Coverage B. property damage
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage * * *."

Immediately following is a list of exclusions, the first of which provides that the insurance does not apply:

> "* * * to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner * * *."

The next relevant portion of the policy is the definitional section, which contains the following passages:

> "When used in Section II of this policy (including endorsements forming a part thereof):
>
>           * * *
>
> 'completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. * * *
>
>           * * *

'products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others * * *.' "

The next page of the policy is the declarations or liability schedule, disclosing "all hazards for which coverage is provided under Item I of the Section II Liability Declarations." (Comprehensive General Liability.) A table made up of five boxes then sets out the five hazards for which insurance might be purchased; opposite each box is a space for the amount of the premium, if any, to be inserted. Under "Premises-Operations" there is typed "Metal Goods Mfg." and premiums of $168 for bodily injury and $39 for property damage are typed in, for a total of $207. Under "Escalators" and "Independent Contractors" there is typed "None at Inception." Under "Completed Operations" and "Products" there is typed "Excluded as per form G304" and the spaces for the premiums are left blank.

The last pertinent portion of the policy is an endorsement, on form G304, which states that it is part of the policy and which is signed by plaintiff's representative. The endorsement provides as follows:

"COMPREHENSIVE GENERAL LIABILITY INSURANCE EXCLUSION
(Completed Operations Hazard and Products Hazard)
It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard."

Where a complaint filed against an insured alleges facts within or potentially within the coverage of the insurance policy, the insurer is under a duty to defend, even where the complaint alleges several theories of recovery against the insured, only one of which falls within the scope of the policy. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193-94, 355 N.E.2d 24.) As stated above, the trial court ruled that only the implied warranty count of the personal injury complaint fell within the coverage of the policy, and the correctness of that ruling only is challenged on this appeal.

Defendant contends that all three counts of the personal injury complaint fall within the completed operations and products hazards as defined in the policy, and both the table of liability declarations and the endorsement make clear that plaintiff did not purchase insurance covering those hazards. See generally *U.S. Sanitary Specialties Corp. v.*

*Globe Indemnity Corp.* (7th Cir. 1953), 204 F.2d 774; *Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491; *Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 290 N.E.2d 873; see also *Martinez v. Hawkeye-Security Insurance Co.* (Colo. 1978), 576 P.2d 1017; *American States Insurance Co. v. Aetna Life & Casualty Co.* (Ind. App. 1978), 379 N.E.2d 510; Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb. L. Rev. 415 (1971).

■■ Arguing in support of the judgment below, plaintiff does not confront defendant's authorities directly, but rather begins by arguing that the policy is ambiguous and therefore should be construed against the insurer seeking to limit its liability. Plaintiff cites two cases which held that similar policies were ambiguous. (See *Ocean Accident & Guarantee Corp. v. Aconomy Erectors, Inc.* (7th Cir. 1955), 224 F.2d 242; *Maretti v. Midland National Insurance Co.* (1963), 42 Ill. App. 2d 17, 190 N.E.2d 597.) Although both cases do refer to the difficulty of reading very similar insurance policies, filled as they are with exclusions, definitions, and cross-references, the chief ambiguity of the policies in those cases was as their coverage of premises-operations and exclusion of the completed operations and products hazards applied to contractors or others whose operations frequently occur off their premises and who arguably deal in services, not in products. (See also, *e.g.*, *Hoffman & Klemperer Co. v. Ocean Accident & Guarantee Corp.* (7th Cir. 1961), 292 F.2d 324.) Even on that point those cases have not been followed by later Illinois cases. (See *Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 290 N.E.2d 873; *Leakakos Construction Co. v. American Surety Co.* (1972), 8 Ill. App. 3d 842, 291 N.E.2d 176.) Moreover, as the court in *Cobbins* noted, discussing *Maretti*, the fact that an insurance policy may be put together in a somewhat confusing manner does not justify construing the contract against the insurer when no real ambiguity exists, nor does it justify distorting the meaning of the policy's words to reach a given result. (53 Ill. 2d 285, 294.) Thus, we cannot hold that the policy at bar is ambiguous per se because it initially states broad, "comprehensive" coverage and then excludes coverage for specific hazards.

Plaintiff also contends that the insurance contract in question contains 62 pages and the total premium was $4833, facts which, plaintiff argues, would not put plaintiff on notice that any expected coverage was lacking. However, both the length of the policy and the amount of the premium result from the fact that the policy provides several kinds of insurance, including property damage and automobile liability insurance. Only about 10 pages of the policy and $207 of the premium are devoted to the comprehensive general liability insurance at issue here. As to plaintiff's

claim that it believed it was purchasing insurance that covered all the risks of its business, the trial court directed a verdict against plaintiff on this point, from which plaintiff has not appealed. Moreover, the existence of the table of liability declarations, setting out the hazards insured against and excluding others, as well as the specific endorsement of exclusion itself, make it obvious that something was being excluded. The issue accordingly is whether, upon examination of the policy as a whole, the warranty liability alleged was sufficiently clearly and unambiguously excluded from coverage.

■■ Plaintiff points first to the paragraph in the body of the policy, immediately after the general statement of coverage for bodily injury and property damage, which excludes liability assumed by the insured but provides that "this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that the work performed by or on behalf of the insured will be done in a workmanlike manner." The only effect of this provision is to place warranties of fitness back within the comprehensive general liability coverage stated in the body of the policy. But, as we have noted, the policy is structured so as initially to provide the broadest possible coverage in the body of the policy and then to narrow coverage, by means of specific exclusions, to those hazards for which insurance is actually purchased. Since there is no contention that implied warranties of merchantability do not fall within the comprehensive liability section of the policy proper, regardless of the quoted provision, the only question is the scope of the subsequent exclusions, for if there is a conflict between the provisions of a policy proper and an attached endorsement, the endorsement controls. *E.g., Metro Inter-Insurance Exchange v. Anthony* (1971), 1 Ill. App. 3d 612, 616, 275 N.E.2d 296; *Konrad v. Hartford Accident & Indemnity Co.* (1956), 11 Ill. App. 2d 503, 527, 137 N.E.2d 855.

The table of liability declarations in the policy provides that the completed operations and products hazards have been "[e]xcluded as per form G304." That form is an attached rider or endorsement labeled, in bold letters, as an exclusion to the policy's comprehensive general liability insurance, and providing that the liability insurance for bodily injury or property damage does not apply to bodily injury or property damage included within the completed operations hazard or the products hazard. Those hazards are defined to include, *inter alia*, "bodily injury * * * arising out of [the insured's operations or products] or reliance upon a representation or warranty made at any time with respect thereto * * *." Plaintiff contends that the exclusion is ambiguous and the phrase "warranty made" should be read as embracing only express warranties, and not the implied warranty liability alleged in the complaint against plaintiff. However, we believe that the language of the exclusion is clear

and that the plain meaning of the term "warranty" includes all warranties, both express and implied. To hold otherwise would be to make a new and different contract for the parties by distorting the meaning of the words in the policy, and to accord coverage which plaintiff did not purchase. See *Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 294, 290 N.E.2d 873.

■■ Accordingly, because the trial court erred in finding that the policy did not exclude the implied warranty liability alleged in the personal injury complaint against plaintiff, the portion of the judgment holding that defendant has a duty to defend plaintiff is reversed.

Reversed.

PERLIN, P. J., and HARTMAN, J., concur.