**In re REINFORCED EARTH, CO., and others—La Colina and Oasis Gardens Litigation.**

**Civil No. 93–1874 (DRD).**

United States District Court,
D. Puerto Rico.

May 3, 1996.

Harvey B. Nachman, Nachman, Santiago, Bray, Guillemard & Carrion, Santurce, PR, for Carmelo Lartigue–Henriquez, Myrna Castro–De Lartigue, Conjugal Partnership Lartigue–Castro, Myrta M. Avila, Carlos Rodriguez–Santiago, Elis Ana Gonzalez, Rodriguez–Gonzal, Roger V. Wall, Dulce G. Santiago–Vela, Wall–Santiago, Edgardo N. Bermudez, Miriam Gonzalez–De–Bermudez, Bermudez–Gonzale, Eloy Gomez, Jr., Aida Gomez, Conjugal Partnership Gomez–Gomez, Hector M. Osorio–Yera, Lydia Lartigue–De–Osorio, Conjugal Partnership Osorio–Lartigue, Carmen G. Caldero–Santiago, Oscar Martin–Martin, Conjugal Partnership Martin–Caldero, Gloria Rodriguez–Sanchez, Alfredo J. Bayouth, Lucia Vega–Chavez, Bayouth–Vega.

Eric Perez–Ochoa, Martinez, Odell & Calabria, San Juan, PR, for Fredrick Newman, Carmen Newman, Conjugal Partnership Newman–Newman, Carlos Gonzalez–Aquino, Maria Ines Castro–Ferrer, Conjugal Partnership Gonzalez–Castro, Raul Rios–Mollineda, Mercedes De–Choudens–Vicente, Conjugal Partnership Rios–De–Choudens, Arturo Gigante, Cecil Marques, Conjugal Partnership Gigante–Marques, Sunil Lula, Anita Lula, Conjugal Partnership Lula–Lula.

Francisco Cobian–Guzman, Cobian & Valls, San Juan, PR, Jennifer W. Fletcher, Harry Griffin Jr., Griffin, Cochrane & Marshall, Atlanta, GA, Armando Lasa–Ferrer, Maria B. Maldonado–Malfregeot, Lasa Monroig & Veve, San Juan, PR, for Reinforced Earth Co.

Francisco Cobian–Guzman, Cobian & Valls, San Juan, PR, Armando Lasa–Ferrer, Lasa Monroig & Veve, San Juan, PR, for Transportation Ins.

Amancio Arias–Guardiola, San Juan, PR, for Leonel Fernandez.

Rafael Fuster–Martinez, Ponce, PR, Enrique Peral–Soler, Munoz, Boneta, Gonzalez, Arbona, Benitez & Peral, Hato Rey, PR, for Jose Blanco–Garrido.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the court is defendant's, Transportation Insurance Company's [1] ("Transportation"), motion for summary judgment, filed on November 18, 1994, (docket 85). On December 20, 1994, co-defendant, Reinforced Earth Company [2] ("RECO") filed a response and opposition to Transportation's motion, (docket 93), to which Transportation replied on February 17, 1995, (docket 109). On April 16, 1996, Transportation filed a motion summarizing the arguments presented in their motion for summary judgment, (docket 172).

### I—Background

The facts are stated in the light "most hospitable to the summary judgment loser, consistent with the record support." *See Roche v. John Hancock Mutual Life Ins. Co.*, 81 F.3d 249 (1st Cir.1996). Plaintiffs [3] have brought this action against RECO, and Lexington Insurance Company [4] ("Lexington"), for the claimed damages suffered by the residents of Oasis Gardens Urbanization and Extension La Colina in Guaynabo,[5] as a result of the alleged defects in the design, manufacture, installation, and/or implementa-

---

1. Transportation Insurance Company is a corporation organized and existing under the laws of the state of Illinois with its principal place of business in the State of Illinois, and doing business in the Commonwealth of Puerto Rico.

2. Reinforced Earth Company is a corporation organized and existing under the laws of the State of Virginia with its principal place of business in Vienna, Virginia, and doing business in the Commonwealth of Puerto Rico.

3. Plaintiffs are the home owners and residents of Oasis Gardens Urbanization and Extension La Colina in Guaynabo, Puerto Rico.

4. Lexington Insurance Company, is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business in Boston, Massachusetts, and doing business in the Commonwealth of Puerto Rico.

5. La Colina is a development of private homes built on an elevated area of land which borders Oasis Gardens Urbanization. These developments are separated by a side slope ("talud") which runs from La Colina, the urbanization located at the top of the slope, down to Oasis Gardens, the urbanization located at the bottom of the slope.

tion of an earth retention wall[6] ("REW"), built by RECO in the La Colina Development[7], "The Project", in Guaynabo, Puerto Rico.

## II—Analysis

### A. THE SUMMARY JUDGMENT STANDARD

Both Plaintiffs and Defendants in their motions refer to documents (i.e., insurance contracts, letters, etc.) outside the pleadings. Because the court shall consider these supplementary materials, the summary judgment standard is both apposite and opportune. *See Garita Hotel Ltd. v. Ponce Federal Bank,* 958 F.2d 15, 19 (1st Cir.1992).[8]

A district court may grant summary judgment when the record documents that possess evidentiary force "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Eileen M. McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313 (1st Cir.1995), (*citing Coyne v. Taber Partners I,* 53 F.3d 454 (1st Cir.

1995)). The intricacies and general standards of Rule 56, have been documented by the First Circuit Court in a "cascade of cases"[9]. "Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial worthy issue exists." *Eileen Mc Carthy,* 56 F.3d at 315, (citing *National Amusements,* 43 F.3d at 735). In applying these criteria, we acknowledge that "genuineness and materiality are not infinitely elastic euphemisms that may be stretched to fit whatever pererrations catch a litigant's fancy." *See Roche v. John Hancock Mutual Life Ins. Co.,* Id. at 253, (citing *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996)). At this crux, we need say no more than that summary judgment will proceed if the record, even when taken in the aspect most favorable to the nonmoving party, fails to yield a trial worthy issue as to some material fact.[10] *Coyne,* 53 F.3d at 457.

A material fact is one that might affect the outcome of the suit under the governing law. "[T]he mere existence of some alleged factual

---

**6.** It is alleged that on or about July 22, 1992, after a period of heavy rainfall, the earth retention wall designed, manufactured, installed and/or implemented by RECO (or its components) in La Colina collapsed, causing the earth it was supposed to retain, to subside, fall, and, or settle.

**7.** To construct the site and the retention wall for the La Colina development, the developers of La Colina, its engineers, contractors, and subcontractors, purchased the products designed and manufactured by the defendant, RECO. The REW was designed, produced, and/or manufactured with products made by RECO. Other parties were contracted to carry out other tasks, including the installation of the retention wall.

**8.** "[T]he test is not whether supplementary materials were filed, but whether the court actually took cognizance of them, or invoked Rule 56, in arriving at its decision". *Id.* at 15.

**9.** *See Coyne v. Taber Partners, Id.; Libertad, et al. v. Welch, et al.,* 53 F.3d 428 (1st Cir.1995); *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995), *petition for cert. denied,* — U.S. —, 115 S.Ct. 2247, 132 L.Ed.2d 255; *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123

L.Ed.2d 470 (1993); *United States v. One Parcel of Real Property (Great Harbor Neck, New Shoreham, R.I.),* 960 F.2d 200, 204 (1st Cir.1992); *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 351–52 (1st Cir.1992); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115–16 (1st Cir.1990); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 7–8 (1st Cir.1990); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48–49 (1st Cir.1990).

**10.** Essentially, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient **to establish the existence of an element essential to that party's case,** and on which that party will bear the burden of proof at trial." (Emphasis ours) *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986), (citations omitted). The nonmovant, however, may not rest upon mere denial of the pleadings. Fed. R.Civ.P. 56. *See Richard A. Mottolo and Service Pumping & Drain Co., Inc. v. Fireman's Fund Insurance Co., et al.,* 43 F.3d 723 (1st Cir.1995).

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Medina–Muñoz,* 896 F.2d at 8 (emphasis in original), *quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir.1994). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

Hence, in applying these criteria, the Court is to consider that "not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law, if found favorably to the nonmovant, that the materiality hurdle is cleared." *See Wilfredo Martinez v. Rafael Colon,* 54 F.3d 980 (1st Cir.1995), (citing *United States v. One Parcel of Real Property,* 960 F.2d at 204).

Consistent with the summary judgment standard, "we canvass the material facts in a light that flatters, but does not impermissibly distort", the nonmoving party's claims, and indulge all inferences in favor of that party [11]. Because in the instant case there are no genuine issues of material fact, what remains to be decided are questions of law.[12]

### III—DISCUSSION

■ Plaintiffs assert several causes of action which arise from the property damage caused by the collapse. First, they allege that the REW was defective, inadequately designed and/or installed and that RECO failed to warn that it was not fit for its intended use. *See* Master Complaint ¶ 27. Second, Plaintiffs claim that RECO was negligent in failing to ascertain that the soil testing reports were inadequate and that the construction of the REW was not in accordance with engineering standards; failing to analyze earth and soil conditions and side slope earth retention criteria; failing to supervise the installation of the wall; and failing to warn plaintiffs of the "dangers to be encountered." Master Complaint at ¶ 34. Third, plaintiffs claim to have suffered emotional distress and depression "[d]ue to the collapse of the defective earth retention wall and the possibility of collapse in the future," Master Complaint at ¶ 42. Finally, plaintiffs claim that RECO breached its express and implied warranties of fitness for a particular purpose, and its implied warranty of merchantability. Master Complaint ¶¶ 48–57.

At this juncture, the court need not concern itself with whether RECO's product actually caused the property damage. Instead, the court must only decide whether there would be coverage under Transportation's policy should plaintiffs allegations prosper. On this quest we now traverse.

Transport has moved for summary judgment alleging that plaintiffs' substantive claims of relief stem directly from RECO's alleged acts or omissions in the design or manufacture of its product (the REW). More specifically Transport alleges that: the REW was defective; the REW was inadequately designed and/or installed; RECO failed to supervise the installation/erection of the wall; and RECO failed to warn the plaintiffs of the potential dangers to be encountered because the REW was not suitable for its intended use. In addition, plaintiffs further allege that RECO was failed to analyze earth and soil conditions at the site, and failed to analyze the side slope earth retention criteria. (*See* docket 93 at 25–26, citing Master Complaint ¶ 34).

11. *See Wilfredo Martinez v. Rafael Colon,* 54 F.3d at 982; *Le Blanc v. Great American Ins.,* 6 F.3d 836, 841 (1st Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *Richard A. Mottolo and Service Pumping and Drain Co., Inc. v. Fireman's Fund Insurance Co., et. al.,* 43 F.3d at 725; *Libertad v. Welch,* 53 F.3d 428 (1st Cir.1995).

12. In order for a court to grant summary judgment, the only issues to be decided by such a motion are issues of law. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:* Civil 2d § 2725. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313 (1st Cir.1995).

Transportation further states that all of plaintiffs' claim against the insured [13], defendant RECO, for "Products and Completed Operations", and rendering of "Professional Services", are included under the Lexington policy, but are specifically, clearly, and unambiguously excluded under Transportation's policy. (*See* docket 85 and 109) Moreover, Transport purports that both insurance policies are "mirror images of each other," in every aspect, except for certain exclusions specified below. The court agrees.

Pursuant to plaintiff's allegations, it remains uncontested that the issue of coverage under Transportation's insurance policy must be decided, regardless of the policy's validity. (*See* Opp. docket 93, at 3, and Reply docket 109, at 2). In deciding Transportation's motion to dismiss, the court shall then review plaintiffs' contentions against RECO, to determine whether there is coverage under Transportation's policy.

13. Transportation states that RECO had procured liability insurance from both Transportation and Lexington.

14. When RECO purchased general liability coverage from Transportation, five types of coverage were available, to wit: (1) bodily injury and property damage; (2) personal and advertising injury; (3) medical expenses; (4) fire damage; and (5) products-completed operations. RECO chose to obtain the first four types of coverage from Transportation and the last type of coverage, namely, products and completed operations, from Lexington. The Declarations page of the Transportation Policy sets forth the applicable limits for each type of coverage RECO requested; coverage for products-completed operations is "EXCLUDED." *See G.E. Mathis Co. v. Centennial Ins. Co.*, 80 Ill.App.3d 610, 36 Ill.Dec. 201, 204, 400 N.E.2d 621, 624 (1980) (declarations page and specific endorsement indicating that products-completed operations coverage was excluded were obvious and unambiguous). Several courts have found that other products-completed operations exclusions, similar or identical to that of Transportation's policy to be unambiguous. *See Travelers Ins. Co. v. Ty Co. Servs., Inc.*, 197 Ga.App. 787, 399 S.E.2d 562, 563 (1990); *Cell–O–Mar, Inc. v. Gros*, 479 So.2d 386, 395 (La.Ct.App.1985); *Hartford Accident & Indem. Co. v. Burmeister*, 207 Neb. 206, 297 N.W.2d 401, 404 (1980). In the present case, the facts as alleged by plaintiffs establish that the prerequisites for invoking the products completed operations exclusion have been properly met.

15. Form CG 2104 states that "This insurance does not apply to 'bodily injury or property dam-

1. The Transportation Policy:

Transportation issued a Comprehensive General Liability Policy Number 4–07417569 [14] to provide RECO coverage from the period between February 28, 1992 to February 28, 1993 (See docket 85 exhibit I). Because the "products-completed Operations Aggregate Limit" is listed as "Excluded" on the Declarations page of the Transportation policy, there can be no coverage for products and completed operations claims. Transport states that this exclusion is reiterated in Form CG 2104 [15], and on indorsement Number 9, the "products-completed operations hazard exclusion".[16]

■ The "products-completed operations hazard" exclusion operates to bar coverage for property damage or bodily injury arising from a product the insured has placed into the stream of commerce or from a service, such as construction or installation, that the insured has completed away from its own premises.[17] Moreover, the definitions of

age' included within the 'products-completed operations hazard.' "

16. Endorsement number 9, or the "products-completed operations hazard exclusion," provides:

1. This insurance does not apply to:
 a. "Bodily injury" or "property damage" included within the "products-completed operations hazard": or

 b. "Bodily injury" or "property damage" arising out of "your products" which are rented or leased to others.
2. The following is added to the definition of "insured contract":
An "insured contract" does not include that part of any contract or agreement:
 e. Under which the insured assumes liability for "bodily injury" or "property damage" included within the "products-completed operations hazard".

17. "Products-completed operations hazard" is defined in Section V.(11) of the insurance policy in pertinent part as follows: 11.a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned. 11.b. "Your work" will be deemed completed at the earliest of the following times: (1) When all of the work called for in your contract has been completed; (2) When all of the work to be done at the site has been completed if

"your product" and "your work" clearly establish that all claims arising from either the insured's product or services rendered by the insured are excluded from coverage.[18]

 Additional exclusions are included in Endorsement Number 10, which provides the "Engineers Architects or Surveyors Professional Liability Exclusion".[19] Hence, to the extent that plaintiffs challenge the design, manufacture or installation of the

REW, along with any express, or implied warranties pertaining to that wall, or claim that RECO improperly designed, supervised, or inspected the wall, said insurance claims against Transportation are unequivocally[20] barred by the insurance policy.[21]

 In the instant case, plaintiffs' allegations fall within the definition of professional services[22]. Hence, the professional services

---

your contract calls for work at more than one site; (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working at the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

18. Section V.(15) defines "your product" in pertinent part as: a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by ... You ... "Your product" includes; a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your product;" and b. The providing of or failure to provide warnings or instructions. Likewise, Section V.(15) defines "your work" as a. Work or operations performed by you or on your behalf; and b. Materials, parts or equipment furnished in connection with such work or operations. "Your work" includes: a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and b. The providing of or failure to provide warnings or instructions.

19. The "Engineers Architects or Surveyors Professional Liability Exclusion" provides in pertinent part: This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services by or for you, including: 1. The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and 2. Supervisory, inspections or engineering services.

20. By virtue of the contractual nature of the insurance policy, a contract performed by the insured and its insurer must be interpreted in accordance with the purpose and intent of the parties and must be considered in its entirety, giving full force and effect to all provisions. *See In re San Juan Dupont Plaza Hotel Fire Litigation*, 802 F.Supp. 624, 637 (D.P.R.1992). In the instant case the terms of the endorsement excluding products-completed operations and pro-

fessional services from coverage are clearly worded and the principal terms in the endorsement are specifically further defined in the policy. "The court must enforce the contract as written without adopting a strained construction as it has no authority to go beyond in an attempt to alter or change the policy." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 802 F.Supp. at 637.

21. It is a well established doctrine in Puerto Rico that when construing the terms of any contract, including an insurance policy contract, the language used shall be interpreted according to its common and general usage. *See Morales Garay v. Roldan Coss*, 110 P.R.Dec. 701 (1981); *Pagan Caraballo v. Silva*, 122 P.R.Dec. 105 (1988); *Garcia Curbelo v. A.F.F.* 91 JTS 6 (P.R.1991); *Marin v. American International Ins. Co.* 94 JTS 132 (P.R.1994). Furthermore, such treatment is also given to the exclusions contained within an insurance policy. Each exclusion has to be clear and unambiguous and shall be interpreted in accordance with its function within the policy. If "an exclusion clause is clear and unambiguous and applicable, then it does not afford coverage despite whatever inferences may arise from the other clauses of the contract. Each exclusion clause shall be read independently from the others and according to its functions in the policy's general agreement. Such construction shall be seriatim, not accumulative." *See Melendez Pineiro v. Levitt & Sons*, 91 JTS 95 (P.R.1991). It is also recognized in Puerto Rico that the exclusion clauses of an insurance policy shall be interpreted restrictively, in such a way as to provide coverage to the insured. Any ambiguity shall be resolved in favor of the insured. However, the doctrine does not compel the exclusion clause to be construed in favor of the insured when such clause is clear and unambiguous against the insured. *See Marin v. American International Insurance*, 94 JTS 132 (P.R.1994).

22. "Professional services, in its usual connotation, means services performed by one in the ordinary course of the practice of his profession, on behalf of another, pursuant to some agreement, express or implied, and for which it could reasonably be expected some compensation would be due." *See Aker v. Sabatier*, 200 So.2d 94, 97 (La.Ct.App.), *application denied*, 251 La.

exclusion precludes coverage for any of RECO's alleged negligent omissions.

Furthermore, because the insured bears the burden of establishing coverage under an insurance policy, and because an exception creates coverage where it would otherwise not exist, "the insured must also prove that the exception affords coverage after an exclusion is triggered". *See St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Co.*, 26 F.3d 1195, 1200 (1st Cir.1994). In the instant case RECO has failed to meet its burden of proving the applicability of any exception to said exclusion. *See Aeroquip Corp. v. Aetna Cas. and Sur. Co., Inc.* 26 F.3d 893, 895 (9th Cir.1994).

### 2. The Lexington Policy:

The Lexington Policy, Architects and Engineers Professional Liability Policy No. 5630737, issued in favor of RECO for the period between January 31, 1992 to February 28, 1993, as previously mentioned, is the "mirror image" of the Transportation policy except that it covers alleged negligent actions, errors, or omissions arising out of professional services rendered for others. (Insuring agreement A.) Professional services are defined on the Declaration page as "all professional services including, but not limited to design and fabrication of construction products and related items." Moreover, Endorsement No. 1 of the policy provides coverage for " 'bodily injury' or 'property damage' caused by an 'ocurrence' arising solely out of the 'Named Insured's Products' or 'completed operations.' . . ." The "Named Insured's Product" is defined as "goods or products manufactured, sold or distributed by the Named Insured or others trading under his name." "Products Hazard" means " 'bodily injury' and 'property damage' arising out of the Named Insured's Products or reliance upon representation or warranty made at

any time with respect thereto, but only if the 'bodily injury' or 'property damage' occurs away from premises owned by or rented to the Named Insured. . . ."

The completed Operations Hazard includes " 'bodily injury' and 'property damage' arising out of operations or reliance upon a representation or warranty made at the time with respect thereto, but only if the 'bodily injury' or 'property damage' occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured."

Hence, unlike Transportation's Policy which specifically excludes coverage for the types of claims made by plaintiffs, Lexington's Policy specifically covers such claims. As such, Lexington is the proper party to this action and Transportation should be dismissed.

Transportation states that at the time RECO purchased insurance, it was represented and advised "by a large and sophisticated insurance broker, Marsh & McLennan", and that RECO obtained products and completed operations from Lexington but excluded it in the Transportation Policy, so that premiums for said coverage were paid to Lexington, but not to Transportation.[23] (See docket 85, at 12)

Because all property damage occurs long after RECO relinquished possession of its product (the REW) to others (the plaintiffs) and completed all operations in Puerto Rico, the threshold inquiry of whether said property damage constitutes product/completed operations claims which are excluded from coverage under the Transport policy is overcome.

Furthermore, as stated hereinabove, plaintiffs' claims involve products and completed

---

48, 49, 202 So.2d 657, 658 (La.1967); *Jensen v. Snellings*, 841 F.2d 600, 613 (5th Cir.1988) (citing with approval *Aker v. Sabatier* ). In addition, the court in *Harbor Ins. Co. v. Omni Construction, Inc.*, 912 F.2d 1520 (D.C.Cir.1990) reiterated that design, engineering, and construction work are so closely related that the professional services exclusion operates to exclude coverage for "construction means and methods," even where these activities are not squarely within the professional services exclusion. *Id.* at 1524.

**23.** General liability coverage (like that of Transportation) is not enough or appropriate coverage once a product (the REW) has been completed and and sent to the market. The appropriate coverage in that case is products liability or completed operations coverage (such as that provided by Lexington to RECO). The coverage provided by Transportation and Lexington are "complementary and not overlapping". *See* 7A John Alan Appleman, Insurance Law and Practice § 4508 at 341 (Berdal Ed.1979).

operations, and professional services including, supervisory, inspection, and engineering services, all of which are covered by the policy issued by Lexington Insurance Company. Consequently, Transportation does not have a duty to indemnify or defend RECO in relation to plaintiffs' claims when so compelled by the terms of a policy it did not provide.[24]

In view of the above, there being no material facts in dispute, and because the question presented relates to the resolution of an insurance contract controversy, which lies "within the province of the court and not the jury"[25], it is evident that Transportation's policy provides no coverage to RECO for plaintiffs' claims in this action.

## IV—CONCLUSION

When analyzing a motion for summary judgment, the court must look at the record ... in the light most favorable to the party opposing the motion. *See Daury v. Smith,* 842 F.2d 9, 11 (1st Cir.1988). However, the opposing party can not defeat a motion for summary judgment by relying solely on his allegations particularly once they are contradicted by the evidence introduced by the motion. *See Perez de la Cruz v. Crowley Towing and Transp. Co.,* 807 F.2d 1084, 1086 (1st Cir.1986). A party opposing summary judgment must present definite competent evidence to rebut the motion. *See Manuel Maldonado–Denis v. Reinaldo Castillo–Rodriguez,* 23 F.3d 576 (1st Cir.1994).

Summary judgment motions must be decided on the record as it stands. That is, neither "conclusory allegations, improbable inferences, and unsupported speculation," *Medina Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d at 8, nor "[b]rash conjectures coupled with earnest hope that something concrete will materialize, is ... sufficient to block summary judgment." *See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.* 76 F.3d 1245, 1251 (1st

Cir.1996), (*citing Dow v. United Broth. of Carpenters and Joiners of America,* 1 F.3d 56, 58 (1st Cir.1993)). Hence, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion." *See Roche v. John Hancock Mutual Life Ins. Co., Id.* at 253, (*citing Dow v. United Bhd. of Carpenters, Id.*).

Accordingly, the Court, upon due deliberation, having found that there are no genuine issues of material fact, and that RECO fails to state a cognizable claim against Transportation Insurance Company, hereby **grants** defendant, Transportation Insurance Company's, motion for summary judgment.

**WHEREFORE,** the Court hereby **dismisses with prejudice** defendant RECO's claims as against co-defendant Transportation Insurance Company.

**IT IS SO ORDERED.**

---

**24.** *See Reyes Lopez v. Misener Marine Constr., Inc.,* 664 F.Supp. 652, 657 (D.P.R.1987) ("where insurer's policy did not provide coverage based on [an] exclusion ... it had no duty to defend [the insured] in these proceedings"), *aff'd,* 854 F.2d 529 (1st Cir.1988). *See also Hydro Sys., Inc. v. Continental Ins. Co.,* 717 F.Supp. 700, 703 (D.C.Cal.1989) ("where there is no potential of liability under a policy exclusion, there is no duty to defend"), *aff'd* 929 F.2d 472 (9th Cir.1991).

**25.** *In re San Juan Dupont Plaza Hotel Fire Litig.,* 802 F.Supp. at 637.