MAPFRE PUERTO RICO, Plaintiff,

v.

Jorge L. GUADALUPE–DELGADO and Capital Leasing, Defendants.

Capital Leasing, Co-defendant and Third Party Plaintiff,

v.

Donzi Marine, LLC, et al., Third Party Defendants.

Civil No. 07–1750 (FAB).

United States District Court, D. Puerto Rico.

May 13, 2009.

Ian P. Carvajal–Zarabozo, Francisco M. Viejo–Lopez, Saldana & Carvajal, P.S.C., San Juan, PR, for Plaintiff.

Guillermo De–Guzman–Vendrell, De Guzman & Gierbolini Law Office, Migdali Ramos–Rivera, Schuster & Aguilo LLP, San Juan, PR, for Defendants/Co-defendant and Third Party Plaintiff.

David C. Indiano–Vicic, Seth Erbe, Indiano & Williams, PSC, Pedro E. Ruiz–Melendez, Pedro E. Ruiz Law Office, PSC, San Juan, PR, Maria B. Maldonado–Malfregeot, Morales & Maldonado Law Offices, P.S.C., Guaynabo, PR, for Third Party Defendants.

**OPINION AND ORDER**

BESOSA, District Judge.

**A. PROCEDURAL BACKGROUND**

MAPFRE Puerto Rico ("MAPFRE") filed this admiralty action seeking this a Declaratory Judgment pursuant to Title 28

of the United States Code, sections 2201–2202 on August 22, 2007. (Docket No. 1) Plaintiff requests that this Court adjudicate and determine the rights of the parties to a contract of marine insurance between plaintiff insurer, the co-defendant insured Jorge L. Guadalupe–Delgado ("Guadalupe"), and the named loss payee in the policy, Capital Leasing Source Corp. ("Capital"). Before the Court is MAPFRE's and Capital's joint request for a default judgment against Guadalupe. (Docket No. 123)

MAPFRE and Capital entered into a confidential settlement agreement, advised the Court, and filed a *Joint Motion for Voluntary Dismissal.* (Docket No. 122) Subsequently, this Court entered judgment accordingly, and dismissed MAPFRE's claims against Capital, as well as Capital's counterclaim against MAPFRE, with prejudice. (Docket No. 127)

Capital also settled its dispute with Popular Insurance, Inc. (MAPFRE's general agent), Renta Esteva Hnos., Inc. (Guadalupe's insurance broker) and Utica Mutual Insurance Company (Renta Esteva Hnos., Inc.'s errors and omissions insurer). These parties also filed a *Joint Notice of Voluntary Dismissal,* requesting the voluntary dismissal of Capital's third party complaints. (Docket No. 126) The Court also issued judgment dismissing the third party complaints against Popular Insurance, Inc., Renta Esteva Hnos., Inc. and Utica Mutual Insurance Company. (Docket No. 129)

In its *Complaint for Declaratory Judgment,* MAPFRE alleged that it issued an insurance policy in favor of defendant Guadalupe under policy number 1548100600014 ("the Policy"). (Docket No. 1, Exhibit 1) The Policy covered a period beginning on May 10, 2006 and ending on May 10, 2007, and insured plaintiff's boat, a motor vessel built by Donzi Marine, model 38ZSF, HIN DNAF1040L506. The vessel at issue sustained severe damages to the hull. The insured, defendant Guadalupe, requested coverage. He claimed that the vessel sustained the alleged damages between May 10, 2006, and May 30, 2006.

Plaintiff raised several causes of action of which only one is capable of being adjudicated pursuant to the request for a default judgment. MAPFRE claims that the policy issued in favor of Guadalupe included a "Speed Warranty" provision in which the insurer clearly stated, that the policy would only cover vessels that were designed, rated or advertised as capable of achieving a maximum speed of no more than thirty five (35) miles per hour. Otherwise, the policy would be null and void. (*See* page 9 of Exhibit 1 of the *Complaint for Declaratory Judgment.* (Docket No. 1) MAPFRE further claimed that the referenced vessel was designed to achieve, and was advertised as capable of achieving, speeds in excess of thirty five (35) miles per hour.[1] MAPFRE concluded that the insured vessel did not comply with the requirements of the Speed Warranty provision. Pursuant to that provision, MAPFRE requested that this Court declare that no coverage is afforded for any of the defendants.[2]

---

1. *See* Exhibit B of *PSUMF,* Unsworn Statement of Mr. Paul Jagdmann, Vice President of Administration for Donzi Marine LLC. (Docket No. 98)

2. MAPFRE also claimed that no coverage exists under the referenced policy because any loss or change caused by or resulting from wear and tear, gradual deterioration, (including marine life), rust, corrosion, latent defect, inherent vice, freezing, overheating, structural or mechanical or electrical breakdown or failure, are allegedly excluded from coverage by Exclusion 1 of the policy.

On February 5, 2008, the Clerk entered default as to Guadalupe. (Docket No. 31) On February 7, 2008, MAPFRE filed a *Motion Requesting Judgment by Default* against Guadalupe. (Docket No. 32) Capital opposed that request on February 25, 2008. (Docket No. 35) After considering Capital's objections to the relief sought, the Court denied the request for judgment by default on March 28, 2008. (Docket No. 52)

In light of the settlement reached with MAPFRE, however, Capital withdrew its opposition to the entry of judgment by default against Guadalupe. *See Joint Motion for Default Judgment.* (Docket No. 123)

For the reasons that follow, the Court finds that Guadalupe breached the conditions of the Speed Warranty and, therefore, the policy was null and void from its inception. MAPFRE is entitled to a declaratory judgment that there is no coverage for the damages sustained by the vessel, as it alleged in the Complaint for Declaratory Judgment.

## B. JUDGMENT BY DEFAULT

■ This Court has previously held that "[t]he default of a defendant constitutes an admission of all facts well-pleaded in the complaint." *Santiago v. Hosp. Cayetano Coll y Toste,* 260 F.Supp.2d 373, 378 (D.P.R.2003) (*citing Metropolitan Life Ins. Co. v. Colon Rivera,* 204 F.Supp.2d 273, 274–75 (D.P.R.2002)), (citing *Banco Bilbao Vizcaya Argentaria v. Family Restaurants, Inc.,* 285 F.3d 111, 114 (1st Cir. 2002)) ("a party gives up its right to contest liability when it declines to participate in the judicial process"); *Franco v. Selective Ins. Co.,* 184 F.3d 4, 9 n. 3 (1st Cir. 1999) ("[a] party who defaults is taken to have conceded the truth of the factual allegations in the complaint"); *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell*

*v. Medfit Int'l, Inc.,* 982 F.2d 686, 693 (1st Cir.1992) ("an entry of a default against a defendant establishes the defendant's liability"); *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.,* 771 F.2d 5 (1st Cir.1985) ("there is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its claims must be considered established as a matter of law."); *Eisler v. Stritzler,* 535 F.2d 148, 153 (1st Cir.1976) ("the default judgment on the well-pleaded allegations in plaintiff's complaint established [ . . . ] defendant's liability"); *see also Caribbean Produce Exchange v. Caribe Hydro–Trailer, Inc.,* 65 F.R.D. 46 (D.P.R.1974) ("it is the law that once a default is entered, a defendant on default has no further standing to contest the factual allegations of plaintiff's claim for relief [ . . . ] Defendant is deemed to have admitted all well pleaded allegations in the complaint. At the most, all that defendant can do is question the extent of the damages suffered by the plaintiff").

In *Don King Prods. v. Raizzette's Cafe,* Civil No. 05–2005(DRD), 2006 U.S. Dist. LEXIS 19882, 1–4 (D.P.R. April 10, 2006), Default Judgment was entered taking into consideration all well-pleaded allegations in the Complaint and the affidavits submitted by the plaintiff.

■ Whenever default is entered, all possible defenses that a defendant may have are forfeited except for those challenging the legal sufficiency of the Complaint. *See Metropolitan Life Ins. Co. v. Colon Rivera,* 204 F.Supp.2d 273, 279 (D.P.R.2002) (citing *Conetta v. National Hair Care Centers, Inc.,* 236 F.3d 67, 76 (1st Cir.2001)).

All well-pleaded allegations of fact made in MAPFRE's Complaint for Declaratory Judgment are hereby deemed admitted by defendant Guadalupe. Therefore, the fol-

lowing material allegations are deemed undisputed:

1. The vessel is equipped with three (3) Mercury Verado outboard engines with 275 horsepower each, and was not only capable, but also advertised as able, to attain speeds in excess of sixty (60) miles per hour. *See* Complaint, Docket No. 1, ¶ 9.

2. The fact that the vessel was capable of obtaining, and also advertised as able to attain, speeds in excess of sixty (60) miles per hour was known to defendant Guadalupe at the time he procured his insurance. *See* Complaint, Docket No. 1, ¶ 10.

3. The vessel was designed and advertised for speeds in excess of thirty five (35) miles per hour. *See* Complaint, Docket No. 1, ¶ 32.

4. Defendants' breach of the Speed Warranty entitles Plaintiff to deny coverage under the terms and conditions of the policy because the Policy is void *ab initio*. *See* Complaint, Docket No. 1, ¶ 33.

With the benefit of the defendant Guadalupe's admissions, the available evidence in the record and the affidavits submitted by MAPFRE, this Court holds that MAPFRE is entitled to the requested Declaratory Judgment.

## C. CONSTRUCTION OF APPLICABLE POLICY PROVISIONS

MAPFRE denied coverage based on the Speed Warranty included in the policy, which reads:

*"SPEED WARRANTY"*

WARRANTED MAXIMUM DESIGNED, RATED OR ADVERTISED SPEED NOT OVER THIRTY FIVE (35) MPH, OTHERWISE THIS INSURANCE IS NULL AND VOID.

*See* page 9 of Exhibit 1 of the *Complaint for Declaratory Judgment,* Docket No. 1.

This clear and unambiguous provision included in the policy establishes that whenever the insured property described in the Policy Declarations has been rated, advertised or is capable of achieving speeds upwards of 35 miles per hour, the policy is automatically void. That is the case here.

The insurance policy described the property insured as a 2006 Donzi motor vessel, model 38ZSF, 38 feet in length, Serial No. DNAF1040L506. (*See* page 2 of Exhibit 1 of the *Complaint for Declaratory Judgment,* Docket No. 1) The vessel was equipped with three (3) outboard Mercury Verado engines, each packing two hundred seventy five horse power (H.P.). In sum, the insured vessel was equipped with a total of 825 H.P. Defendant Guadalupe knew of this fact when the vessel was acquired from Puerto Rico Nautic. (*See* page 1 of Exhibit 4 of the *Complaint for Declaratory Judgment,* Docket No. 1, Marine Surveyor Doug Wager's Preliminary Report; *See* Exhibit A of the Proposed Statement of Uncontested Facts ("*PSUMF*") attached to the *Motion for Summary Judgment,* Docket No. 98, Marine Surveyor Doug Wager's picture of the vessel's engines).

The vessel was designed and advertised as capable of exceeding speeds of sixty miles per hour (60 m.p.h.). (*See* Exhibit B of *PSUMF,* Unsworn Statement of Mr. Paul Jagdmann, Vice President of Administration for Donzi Marine LLC, Docket No. 98.) Donzi advertised this particular vessel as:

Quick to plane, agile and fast, rigged with triple Mercury 275 Verado engines the 38ZSF reaches top speeds well in excess of 60 miles per hour.

*See* page 2 of Exhibit B of *PSUMF,* Docket No. 98.

Defendant Guadalupe testified under oath that on the same day that he discovered the damages to the hull of the boat he had run the vessel from Fajardo, P.R., to Vistamar Marina in Carolina, P.R. at speeds between 55 and 60 knots. (*See* page 5 of Exhibit C of *PSUMF*, certified translation of excerpts of the deposition taken to Jorge Guadalupe–Delgado on May 22, 2008, Docket No. 98). One knot equals 1.15077945 miles per hour. This means that Guadalupe ran the vessel at speeds between 63 to 69 m.p.h. on the same day he discovered the damages to the hull. The policy issued by MAPFRE does not insure against such risks. That is why it includes a Speed Warranty provision limiting coverage to vessels rated, advertised or capable of achieving speeds not over thirty-five (35) m.p.h., or the policy is automatically void.

Had MAPFRE been informed by the insured or his insurance broker that the vessel was capable of achieving speeds in excess of thirty five miles per hour (35 m.p.h.), MAPFRE would have declined the risk. (*See* Exhibit D of *PSUMF*, Unsworn Statement Under Penalty of Perjury signed by Jaime Berrios, Property and Casualty Underwriting Vice President for MAPFRE PRAICO Ins. Co., Docket No. 98.)

When construing the terms of an insurance policy contract, the policy's language shall be interpreted according to its common and general usage. *See In re Reinforced Earth Co.*, 925 F.Supp. 913 at n. 21 (D.P.R.1996) (*citing Morales Garay v. Roldan Coss*, 110 D.P.R. 701 (1981)). Article 1233 of the Puerto Rico Civil Code provides that, "if the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations should be observed." Laws of P.R. Ann. tit. 31 § 3471 (2002).

■ Puerto Rico law requires, however, that the exclusion clauses of an insurance policy be interpreted restrictively, generally favoring coverage to the insured. *See Guerrido Garcia v. U.C.B.*, 143 D.P.R. 337, 348 (1997). *See also Nahan v. Pan Am. Grain Mfg. Co., Inc.*, 62 F.Supp.2d 419 at n. 5 (D.P.R.1999). "However, this praxis does not compel or require courts to interpret a clear, unambiguous clause that favors the insurer in a manner that would benefit the insured." *Metlife Capital Corp. v. Westchester Fire Ins. Co.*, 224 F.Supp.2d 374, 382 (D.P.R.2002) (citing *Quiñones Lopez v. Manzano Pozas*, 141 D.P.R. 139, 155 (1996)) (emphasis added). *See also, Nahan*, 62 F.Supp.2d at n. 5 (citing *Marin v. American Int'l Ins. Co.*, 137 D.P.R. 356 (1994)).

■ The determination of whether the subject Policy's warranties and conditions are unambiguous is a matter of law. *See* Couch on Insurance 3d Ed. § 21:13 (noting that "[w]hether or not a contract of insurance is ambiguous is a question of law for the court, in keeping with the general rule that the construction and effect of a written contract of insurance is a matter of law, to be determined by the court and not by the jury, where there is no occasion to resort to extrinsic evidence for the purpose of resolving an ambiguity.").

The First Circuit Court of Appeals recently clarified that, "while ambiguous terms may be constructed to favor an insured, we may not find a term ambiguous merely because it eliminated coverage." *Littlefield v. Acadia Ins. Co.*, 392 F.3d 1, 8 (1st Cir.2004). In other words, "[c]lear provisions should not be strained to suggest ambiguity." *Andover Newton Theological School, Inc. v. Continental Casualty Co.*, 930 F.2d 89, 93 (1st Cir.1991). *See also* Couch on Insurance 3d Ed. § 22:10 (noting that "if there is no ambiguity in the insurance contract it is the duty of the

court to apply to the words used their ordinary meaning and not favor either party in the construction."). Similarly, this Court has held that:

> In sum, under Puerto Rico law, when the terms, conditions, and exclusions listed in a policy are clear and give no margin for ambiguities or differences in interpretation, they must be enforced in accordance with the will of the parties.

*Metlife Capital Corp.*, 224 F.Supp.2d at 382 (*citing Quiñones Lopez*, 141 D.P.R. at 156).

Pursuant to the authorities discussed, the first step to interpret or construe a marine insurance contract is to determine whether the language of the relevant contract provisions is clear and unambiguous. *See Couch on Insurance* § 22:17 (West 3rd ed. 2005) (noting that "Courts must first interpret the policy language; there is no need to apply the anti-insurer rule when the policy language is clear."). Following a finding of unambiguousness, the Civil Code and its applicable case law require that the policy provisions be enforced as written and that the literal language of the policy be observed. *See id.* at § 21:4 (noting that "where the policy language is clear and unambiguous the court must enforce it as it is written and cannot impose a strained construction in order to reach a different result than that demanded by the policy provisions.").

On other hand, if the relevant contract clauses allow for more than one reasonable meaning, then such provision will be considered ambiguous. *See id.* at § 21:14 (noting that "[t]o be ambiguous, an insurance policy must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. An insurance policy is ambiguous when it is fairly susceptible to two or more constructions."). It is only after a finding of am-biguousness that the Court will need to implement the rules of construction of insurance contracts, which could require extrinsic evidence of the intent of the contracting parties.

This Court is aware of the amount of case law holding that clear contract provisions should not be interpreted as ambiguous merely because their literal application would eliminate coverage. *See, e.g., Littlefield*, 392 F.3d at 8; *Metlife Capital*, 224 F.Supp.2d at 382. *See also Couch*, supra at § 21:18 (discussing the well-settled principle that courts should refrain from "exercis[ing their] inventive powers for the purpose of creating an ambiguity where none exists.").

■ Although described as a "warranty," the Speed Warranty is not truly a warranty; it is, rather, a limitation of the risks insured against and not merely a condition precedent requiring the insured to act or not to act a certain way. This distinction is important, because it affects the ability of a loss payee, such as a mortgagee, to collect the insured amounts.

There are two types of warranties, express and implied, and either one of them can be promissory or affirmative in nature. *See* 6 *Couch on Insurance* 3d Ed. at §§ 81:10–:18. Couch defines an express warranty as follows:

> An express warranty is a particular written statement or stipulation inserted on the face of the policy itself, or clearly embodied therein as a part thereof by proper words of reference, whereby the insured expressly agrees that certain facts are, or shall be, true, or that certain acts have been, or shall be, done, and upon the literal truth or exact fulfillment of which the validity of the contract of insurance depends, it being per-

missible that the warranty relates to the past, present, or future, or each, or all. *Id.* at § 81:11.

On the other hand, "[t]he term 'implied warranties' applies to certain stipulations, which, from the very nature of the contract, are necessarily embodied as parts of marine policies, and which bind the insured with the same force as if actually expressed in the contract." *Id.* at § 81:12.

A promissory warranty is "one by which the insured stipulates that something shall be done or omitted after the policy takes effect and during is continuance," while an affirmative warranty is "one by which the insured undertakes to vouch for the truth of some positive allegation specifically stipulating that certain facts are true or untrue." *Id.* at §§ 81:13–:14 (cited with approval in *Lloyd's of London v. Pagan–Sanchez*, 539 F.3d 19, 23 (1st Cir.2008)).

"Generally speaking, a warranty in the law of insurance is a statement, stipulation, or condition which forms a part of the contract, whereby the insured contracts as to the existence of several facts, circumstances, or conditions, the literal truth as to which is essential to the validity of the contract." *Id.* at § 81:10.

Federal courts have defined the term "warranty" in marine insurance law as "a promise by which the assured undertakes that some particular thing shall or shall not be done, or that some condition shall be fulfilled, or whereby he affirms or negatives the existence of a particular state of facts." *Commercial Union Ins. Co. v. Flagship Marine Serv., Inc.*, 190 F.3d 26, 31 (2nd Cir.1999) (*quoting* the English Marine Ins. Act of 1906, 6 Edw. 7, c. 41 at § 33(1)). Moreover, "[i]n the law of marine insurance a true warranty is promissory in nature, i.e., the assured expressly or impliedly undertakes that some particular thing shall or shall not be done, or that some condition shall be fulfilled, or that a

particular state of facts does or does not exist." Nicholas J. Healy, *The Hull Policy: Warranties, Representations, Disclosures and Conditions*, 41 Tul.L.Rev. 245, 252 (1967).

Thus, it is evident that the Speed Warranty clause in question does not require that "that some particular thing shall or shall not be done, or that some condition shall be fulfilled, or that a particular state of facts does or does not exist" and, therefore, cannot be considered a warranty. It is, however, a limitation of the risks insured against rather than a condition precedent requiring the insured to act or not to act a certain way.

## D. CONCLUSION

The Speed Warranty limitation is clear and unambiguous. As such, it must be strictly enforced. For the reasons stated above, this Court enters declaratory judgment in favor of MAPFRE and against defendant Jorge Guadalupe–Delgado and declares that the breach of the Speed Warranty provision included in the policy issued by MAPFRE voided the policy *ab initio*.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**